UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ROD EDWARDS,

        Plaintiff,

v.

MULTNOMAH COUNTY SHERIFF DANIEL STATON; DIRECTOR OF HUMAN RESOURCES FOR THE MULTNOMAH COUNTY SHERIFF'S OFFICE JENNIFER OTT; MULTNOMAH COUNTY SHERIFF'S OFFICE UNDER SHERIFF TIM MOORE; MULTNOMAH COUNTY SHERIFF'S OFFICE CHIEF DEPUTY JASON GATES; by and through the MULTNOMAH COUNTY SHERIFF'S OFFICE, a political subdivision of MULTNOMAH COUNTY, OREGON,

        Defendants.

Case No.: 3:14-CV-00531-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Rod Edwards ("Edwards") sued the Multnomah County Sheriff's Office ("MCSO") and four of its employees for constitutional violations relating to his employment. Edwards alleges that each of the defendants violated his constitutional right to substantive and procedural due process and his rights under the First and Fourteenth Amendments. Edwards also alleges these violations were a result of MCSO's policy, for which it is liable under *Monell*. Defendants move to dismiss all of Edwards' claims for failure to state a claim upon which relief may be granted.

*Background*

Edwards is a disabled veteran as contemplated by the laws of Oregon. (Pl.'s First Am. Compl. ("Compl.") ¶ 17.) He was hired as an enforcement deputy sheriff by the MCSO in 1994. (*Id.* at ¶ 12.) During his tenure at the MCSO, Edwards has been assigned to patrol, court services, river patrol, civil unit, inspections unit, SWAT, dive team, and firearms instructor. (*Id.*) Multnomah County and the MCSO are public employers. (*Id.* at ¶ 20.)

Under OR. REV. STAT. § 408.230, public employers shall grant a preference to veterans and disabled veterans when applying for civil service positions and promotions. (*Id.* at ¶¶ 18, 19.) In 2002, Edwards applied for, and was denied a promotion to the rank of sergeant. (*Id.* at ¶ 21.) Edwards filed a civil action against the MCSO for failing to adequately apply a veteran's preference to its promotion process in 2002. (*Id.* at ¶ 23.) In 2005, Edwards reapplied and was selected for promotion to the rank of sergeant. (*Id.* at ¶ 24.) Edwards's civil action against the MCSO was settled in 2006. (*Id.* at ¶ 25.)

In September 2012, Edwards applied for promotion to the rank of lieutenant, which was denied that October. (*Id.* at ¶¶ 33, 34.) Edwards received a written explanation regarding the

application of the statutory veteran's preference during the application process. (*Id.* at ¶ 35.) The MCSO explained that Edwards emerged as the top candidate for the position at the end of the interview process, but after considering the three components of the promotion process – a letter of interest and resume, a command staff interview, and 360 reviews – the MCSO made its promotion decision based on "your and the other candidate's merits and qualifications as they relate to the lieutenant[] position." (*Id.*)

In January 2013, the MCSO published an announcement for an open "Corrections Lieutenant" position. (*Id.* at ¶ 37.) The announcement, unlike the September 2012 announcement, stated that a veteran's preference would apply and gave instructions regarding the procedure qualified veterans could use to apply for such a preference. (*Id.*)

In response, Edwards filed a Claim Notice in compliance with the Oregon Tort Claims Act and OR. REV. STAT. § 30.275. (*Id.* at ¶ 38.) In addition, Edwards filed a Complaint regarding the September 2012 promotion process with the Oregon Bureau of Labor and Industries' ("BOLI") Civil Rights Division, claiming a violation of OR. REV. STAT. § 408.230 and retaliation for Edwards's 2003 lawsuit. (*Id.* at ¶ 39.) On April 1, 2014, BOLI published a Final Order stating in part that the MCSO did not comply with the requirements of OR. REV. STAT. § 408.230.

Edwards filed this action in July 2014, and claims his: (1) right to substantive and procedural due process was violated; (2) 2003 lawsuit resulted in the disparate treatment he received during the 2012 interview process, constituting a violation of Edwards' constitutional rights; and (3) right to free speech was violated. In addition, Edwards raises the same allegations against the MCSO, constituting a set of *Monell* claims.

///

*Legal Standard*

A well-pleaded complaint must have a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2014). FED. R. CIV. P. 12(b)(6) motions are granted if the allegations in the complaint are insufficient to state a claim for relief. FED. R. CIV. P. 12(b)(6) (2014). The Supreme Court has explained the necessity of including sufficient facts in the pleading to give proper notice of the claim, stating that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligations to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007) (alteration omitted). The Court also noted "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The Court illuminated two principles underlying its decision in *Twombly*. First, although a court must accept allegations in a complaint as true, it is not forced to accept all legal conclusions set forth in a pleading as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, the complaint must contain a plausible, not merely possible, claim for relief. *Id.* at 679. The Court clarified that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)).

On a motion to dismiss for failure to state a claim, the court must take as true all allegations of material fact, construing them in the light most favorable to the non-moving party. *Am. Family*

*Ass'n Inc. v. City & Cnty. of S. F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). The court's review is limited to the face of the complaint and any documents referenced in the complaint, and those matters which the court may properly take judicial notice. *Schwartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Otherwise, as a general rule, a district court may not consider any material outside the pleadings when ruling on a FRCP 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

*Discussion*

I.   Due Process Claims

The Due Process Clause in the Fifth Amendment to the U.S. Constitution provides no person shall be "deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Supreme Court has held the Due Process Clause protects individuals' rights to substantive and procedural due process. *See generally U.S. v. Salerno*, 481 U.S. 739, 746 (1987) (explaining that substantive due process prevents unfounded governmental deprivations of life, liberty, or property, and procedural due process requires fair implementation of a deprivation.). The Court has described substantive due process as a concept that prevents the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Id.* If government action deprives a person of life, liberty, or property, and survives substantive scrutiny, it is subject to procedural scrutiny, which requires the deprivation be implemented in a fair manner. *Id*; *see Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment"). Edwards claims that both his substantive and procedural rights to due

process have been violated. Defendants contend Edwards has failed to state a legally cognizable claim or alternatively, that his claims are not factually plausible.

*A. Substantive Due Process*

To establish a substantive due process claim, Edwards must show a government deprivation of life, liberty, or property. *Nunez v. City of L. A.*, 147 F.3d 867, 871 (9th Cir. 1998). Counts 1, 5, and 6 (incorrectly denoted as 1, 6, and 7) of Edwards's Complaint claims a deprivation of substantive due process by Defendants, the MCSO, and Sheriff Staton, respectively. Edwards contends:

> [t]he actions of Defendants of depriving plaintiff his statutorily mandated veteran preference inhibited his ability to be promoted, the ability to perform his career, a fair and objective opportunity to advance to the rank of lieutenant, and the right to the statutory benefits as a veteran and disabled veteran . . . .

(Compl. ¶¶ 59, 87, and 96.)

The defendants counter that substantive due process does not guarantee the right to a promotion or the right to preference in hiring. In addition, defendants argue Edwards is still employed with the MCSO, thus Edwards's claim that he is "unable to perform his career" must fail as a matter of law. (Def's. Mem. Dismiss 4.)

As a threshold matter, Edwards must plead he has a property interest in a veteran's preference to properly state a due process claim. The government cannot deprive a person of a right or interest the person does not possess in the first place. To constitute a property interest, "a person clearly must have more than an abstract need or desire," or a mere "unilateral expectation" of a benefit or privilege. *Nunez*, 147 F.3d at 872 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Rather, a person must "have a legitimate claim of entitlement" to a benefit or privilege. *Id.* The Supreme Court has recognized that property interests are created by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577. Therefore, "a person's

PAGE 6 - FINDINGS AND RECOMMENDATION                    {JGJ}

interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . ." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

Edwards relies on Oregon's veterans preference statute, OR. REV. STAT. § 408.230, to support his due process claim. Specifically, Edwards relies on the portion of the statute that reads: "[a] public employer shall grant a preference to a veteran or disabled veteran who applies for a vacant civil service position or seeks promotion to a civil service position with a higher maximum salary rate . . . ." OR. REV. STAT. § 408.230. Edwards contends:

> ORS 408.230 Veteran Preference in Public Employment creates a property interest for qualified veterans and disabled veterans during the promotion process for civil servant positions in so far as a public employer is statutorily obligated to afford qualified veterans and disabled veterans with an objectively identifiable preference in the promotion process, or, when a numerical score is used five points for a veteran and ten points for a disabled veteran.

(Compl. ¶ 19.)

Defendants counter that "[t]here is no Substantive Due Process protection for promotions." (Def's. Mem. Dismiss 4.) To support its contention, defendants cite to *Nunez*, in which the Ninth Circuit dealt with a similar issue. 147 F.3d at 871 ("The central question on appeal is whether the LAPD violated the police officers' substantive due process rights by promoting inexperienced candidates in disregard of official policy"). In that case, the court held the police officers did not assert a cognizable property or liberty interest in being promoted. *Nunez*, 147 F.3d at 874. *Nunez* is distinguishable from this case because the property interest alleged in *Nunez* was the actual promotion of the officer, whereas the property interest alleged here is a veteran's preference during a candidate's evaluation.

As state law dictates the existence of a property right, the court must look to Oregon's

PAGE 7 - FINDINGS AND RECOMMENDATION                               {JGJ}

veteran preference statute to determine if it grants Edwards a property interest. Here, the relevant statute explicitly states, "[a] public employer *shall* grant a preference to a veteran . . . ." OR. REV. STAT. § 408.230(1) (emphasis added). Therefore, the statute meets the requirements established by the Supreme Court and applied by the Ninth Circuit for creating an entitlement; specifically, the benefit of veteran's preference in hiring. Unlike *Nunez*, where the officers had mere expectations of promotion, Oregon's statutory language expressly grants an expectation of a property interest in the veteran's preference during public employer hiring because the language may be construed as "so firm and definite . . . as to be 'property' in a constitutional sense." *See Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985).

However, that an individual holds a property interest does not automatically entitle such interest to substantive due process protection. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) ("Even if one assumes the existence of a property right, . . . not every such right is entitled to the protections of substantive due process."). In fact, the Ninth Circuit has been clear that "some 'gate-keeping' requirement is necessary to respect the strong federalism and judicial restraint concerns at issue in cases such as this." *Brittain v. Hansen*, 451 F.3d 982, 995 (2006).

"Substantive due process is ordinarily reserved for those rights that are 'fundamental.'" *Brittain*, 451 F.3d at 990 (citing *Glucksberg*, 521 U.S. at 721). The Supreme Court has specified what it considers to be fundamental rights: "personal decisions related to marriage, procreation, contraception, family relationships, child rearing, and education." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992) (citing *Carey v. Population Servs. Int'l*, 431 U.S. 678, 685 (1977)). As a general practice, federal courts have "always been reluctant to expand the concept of

substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. at 225-26). The Court has cautioned that judges must "exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [judges]." *Wash. v. Glucksberg*, U.S. 702, 720 (1997).

The Third Circuit addressed veteran's preference in the context of substantive due process in *Gikas v. Wash. School Dist.*, 328 F.3d 731 (3d Cir. 2003). The court relied on its decision in *Nicholas, M.D. v. Pa. State Univ.*, 227 F.3d 133 (3d Cir. 2003), which illustrates that although Supreme Court jurisprudence provides "little guidance" as to what interests are worthy of substantive due process protection, one guiding principle does emerge: whether the interest is "fundamental" under the United States Constitution. *Gikas*, 328 F.3d at 735 (citing *Nicholas*, 227 F.3d at 139-40). The *Gikas* court held:

> The interest in the preference is solely based upon state law. Thus, having no reason to believe that Gikas' interest in the veterans' preference is a fundamental right created by the federal Constitution, we conclude that § 7104(a) of the VPA does not create a property interest protected by substantive due process.

*Id.* at 736-37.

The court finds the Third Circuit's analysis persuasive and consistent with Supreme Court and Ninth Circuit jurisprudence concerning substantive due process. Like the plaintiff in *Gikas*, Edwards has claimed a property interest in veterans' preference for employment purposes. Edwards has also claimed such a property interest is to be afforded the protection of substantive due process. Given the case law addressing substantive due process and the directives of both the Supreme Court and the Ninth Circuit, the court concludes that Edwards fails to plead a legally cognizable

PAGE 9 - FINDINGS AND RECOMMENDATION                                    {JGJ}

substantive due process claim. The right asserted is not a "fundamental" right that demands the protection of the Constitution by way of substantive due process. Therefore, the court finds Edwards has failed to plead a plausible claim for relief based on substantive due process. Defendants' Motion to Dismiss Edwards's substantive due process claim should be granted with prejudice.

*B. Procedural Due Process*

When government action depriving a person of life, liberty, or property, the deprivation must be implemented in fairly. *Mathews*, 424 U.S. at 335. This is generally referred to as "procedural due process." *U.S. v. Salerno*, 481 U.S. at 746. The requirements of procedural due process apply only to the interests contemplated by the Fourteenth Amendment's protection of liberty and property. *Bd. of Regents of State Colls.*, 408 U.S. at 570.

Here, Edwards contends his interest is protected by the Fourteenth Amendment and that he "has a right not to be deprived of his benefits as a disabled veteran or not have the deprivation of those benefits adversely impact his public employer without due process, or to be subject to abuse at his employment without proper recourse." (Compl. ¶ 68.) Edwards alleges the defendants violated his right to procedural due process by (1) abandoning previously utilized promotion practices in order to deny him an objective opportunity for promotion to the rank of lieutenant; (2) failing to devise a process that accurately afforded him a veteran preference as required by ORS 408.230 during each stage of the evaluation process used to evaluate his candidacy; and (3) failing to abide in accordance with the promotion process published by Multnomah County. (Compl. ¶ 67.)

Defendants argue that even if Edwards has a property interest in the application of a veteran's preference, Edwards is not entitled to any more procedural due process than what he has already received. (Defs.' Mem. Dismiss 5.) Edwards received a written explanation of how the preference

was applied to his promotion process and BOLI issued a decision finding the MCSO violated Oregon's veteran's preference statute. The BOLI proceeding and determination, argues defendant, is all the due process to which Edwards is entitled. (Defs.' Mem. Dismiss 10.)

To determine what procedures are adequate to constitute due process, the court applies the balancing test articulated in *Mathews. Ass'n for L. A. Deputy Sheriffs v. Cnty. of L. A.*, 648 F.3d 986, 994 (9th Cir. 2011). Under *Matthews*, the court must consider: (1) the private interests affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Matthews*, 424 U.S. at 335.

Drawing every inference in favor of Edwards, as the court must at the pleading stage, the court finds Edwards could conceivably prove facts to support the allegation that defendants' policy caused a violation of his right to procedural due process. For example, Edwards could show defendants' abandonment of previously established and utilized promotion protocol created too great a risk of erroneously depriving Edwards of a protected interest in receiving the statutorily mandated veteran's preference, or that the MCSO's interest in maintaining such protocols does not outweigh Edwards's interest in previously and subsequently utilized promotion protocols. Because Edwards can potentially prove a plausible set of facts to support his claims, the court finds Edwards adequately states a procedural due process claim. As such, defendants' Motion to Dismiss Edwards's procedural due process claim should be denied.

///

## II. Retaliation in Violation of Edward's Constitutional Rights

Edwards claims that the filing of a civil lawsuit in 2003, was a motivating factor for the defendants when devising the promotion process for the September 5, 2012 lieutenant opening. In particular, Edwards claims defendants failed to employ a previously established, previously implemented promotion process because of Edwards's past lawsuit against the MCSO. (Compl.¶ 75.) This, Edwards argues, denied him "a fair and objective opportunity for the promotion to the rank of lieutenant." (*Id.*)

Defendants state that "too many years have passed between the filing of his 2003 lawsuit and his denial of a promotion in 2012." (Defs.' Mem. Dismiss 11.) Specifically, defendants claim Edwards "relies on nothing more than an assumption that the failure to obtain a promotion was retaliatory because it came after the lawsuit." (*Id.*) However, as noted by the defendant, the Ninth Circuit has declined to create a bright-line test "based on temporal proximity alone in First Amendment Retaliation cases." (*Id.* at 12.) Rather, the Ninth Circuit has held:

> There is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation. Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances.

*Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2000). For this reason, defendant's argument that too much time has passed since the 2003 lawsuit is insufficient to prove Edwards has failed to state a legally cognizable claim for relief.

It is widely established that "the state may not abuse its position as employer to stifle ' the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'" *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (quoting *Pickering v. Bd.*

*of Educ.*, 391 U.S. 563, 568 (1968)). To adequately plead retaliation in violation of the First and Fourteenth Amendments, a plaintiff must potentially be able to satisfy the components of the Supreme Court's balancing test established in *Pickering*. 391 U.S. 563. This test requires the court to seek "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568.

Since *Pickering* was decided, the Ninth Circuit has refined the *Pickering* balancing test into a five-step inquiry that asks:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or a public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken adverse employment action even absent the protected speech.

*Eng*, 552 F.3d at 1070.

In his Amended Complaint, Edwards alleges his 2003 lawsuit was a matter of public concern and the same lawsuit was a motivating factor for one or more of the defendants. (Compl. ¶¶ 80-82.) Further, Edwards alleges there is sufficient information to believe and allege the defendants engaged the 2012 promotion process so as to intentionally deprive Edwards of an opportunity for promotion by failing to accurately afford Edwards or any other qualified veteran or disabled veteran with the statutorily mandated preference during the 2012 promotion process. (*Id.* at ¶ 82.)

Because the court's duty is to determine whether Edwards could conceivably prove facts to support his allegations, and because every inference must be made in favor of the non-moving party, the court finds Edwards has pleaded a plausible retaliation claim for the purposes of Rule 12(b)(6) scrutiny. Edwards has pleaded several facts that could plausibly be proven to support his retaliation

claim. For example, Edwards alleges defendants gave different accounts of the Edwards' promotion process, supporting his contention that defendants could not "articulate why the previously used promotion selection processes were abandoned during the September 5, 2012 lieutenant promotion process." (*Id.* at ¶ 42.) Edwards also plausibly pleads a lack of transparency in the application of veterans' preference points to support his contention that "defendants used the promotion process for the September 5, 2012 lieutenant opening with the intent of denying plaintiff his statutory mandated preference as a veteran or disabled veteran." (*Id.*) Because Edwards alleges facts that could be plausibly proven to support his retaliation claim, defendants' Motion to Dismiss for failure to state a claim should be denied.

III.   *Monell* Claims

Edwards also contends the MCSO and Multnomah County violated his rights under 42 U.S.C. § 1983. (Compl. ¶ 87.) Such claims are often dubbed *Monell* claims. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 701 (1978) (municipal corporations may be named in a section 1983 lawsuit). Generally, local government entities can be sued under section 1983 for damages and injunctive relief, so long as they are not the state or an arm of the state. *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717-25 (1973); *see N. Ins. Co. of N. Y. v. Chantham Cnty. Ga.*, 547 U.S. 189, (2006) ("Because preratification sovereignty is the source of immunity from suit, only States and arms of the State possess immunity from suits authorized by federal law."). There is no dispute here that MCSO and Multnomah County is subject to being sued under a *Monell* theory.

Specifically, Edwards contends the policies of the MCSO and Multnomah County "constituted an unwarranted denial of plaintiff's constitution [sic] rights." (Compl. ¶ 87.) Additionally, Edwards alleges Defendants Staton, Otts, Gates, and Moore were final policymakers

for the MCSO and Multnomah County and deprived plaintiff of his constitutional rights (Compl. ¶ 93.)

Defendants counter that because Edwards's claims "against the individually-named Defendants for violations of the Substantive Due Process Clause, Procedural Due Process Clause, and the First Amendment all fail," so too must Edwards' *Monell* claims against the MCSO and Multnomah County. (Defs' Mem. Dismiss 14.) In addition, defendants claim that each of the individually named defendants are entitled to qualified immunity. (*Id.*)

### A. MCSO and Multnomah County Policies

Edwards concedes the MCSO does not have an independent policy for the application of veteran's preference points for the purposes of promotions aside from that published and adopted by Multnomah County. (Compl. ¶ 28.) Therefore, the only policy actually contested by Edwards is that of Multnomah County.

Edwards states it "is the policy of Multnomah County that veteran preference will be applied to Multnomah County promotions with a qualified veteran receiving five points and a qualified disabled veteran receiving ten points." (*Id.* at 29.) To properly allege and challenge a municipality's policies, practices, or customs as unconstitutional, Edwards must show that "no set of circumstances exists under which the [policy] would be valid." *Lanier v. City of Woodburn*, 518 F.3d 1147, 1150 (9th Cir. 2008) (quoting *U.S. v. Salerno*, 481 U.S. at 745). Edwards has not pleaded that Multnomah County's policies cannot be valid under any set of circumstances. Rather, Edwards's claims have more to do with a deviation from established policies that result in the alleged violations. In fact, Edwards consistently points out that the individually named plaintiffs at the MCSO "[a]bandoned the established and previously used promotion process," and "failed to employ the "Assessment

Center method previously used in the promotion process. . . ." (Compl. ¶ 87.)

As they stand, Edwards's *Monell* claims relating to Multnomah County's policy are deficient. Edwards must plead plausible facts that could prove there are no circumstances under which Multnomah County's policy can be valid. Therefore, the court should grant defendant's motion to dismiss Edwards's *Monell* claim based on Multnomah County's policies without prejudice and allow Edwards leave to amend his complaint.

*B. Final Policymakers*

Next, Edwards claims defendants Ott, Gates, Moore, and Staton were final policymakers of the MCSO and Multnomah County and, as such, their "individual or collective actions or inaction . . . deprived the plaintiff of his constitution rights. . . ." (Compl. ¶¶ 95-96.)

In *Pembaur v. City of Cincinnati*, the Supreme Court held that a decision by an individual with policymaking authority in a given area could constitute official policy to be attributed to the government itself in certain circumstances. 475 U.S. 469, 478 (1986). Who constitutes a final policymaker is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Generally, however, a final policymaker will be someone whose decisions are not subject to review by another official or governmental body. *See McMillian v. Monroe Cnty.*, 520 U.S. 781, 785-86 (1997) ("Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue.").

Here, Edwards explicitly states defendant Staton supervised defendants Ott, Moore, and Gates. (Compl. ¶¶ 14-16.) It follows then, that defendants Ott, Moore, and Gates could not be final policymakers as their decisions were subject to the approval of defendant Staton. Even construing

the factual allegations in the light most favorable to Edwards, this claim against defendants Ott, Moore, and Gates fails to pass the Rule 12(b)(6) standard. Because Edwards's policymaker claim against defendants Ott, Moore, and Gates is not plausible, defendants' motion as to Ott, Moore, and Gates should be granted with prejudice.

However, as to defendant Staton, Edwards could prove plausible facts to support his claim that decisions or actions by Staton constituted official MCSO policy to be attributed to the government itself. For example, Edwards could prove Sheriff Staton did not apply a veteran's preference during Edwards's promotion process. For this reason, the defendant's motion as to defendant Staton should be denied.

## IV.   Qualified Immunity

Defendants argue they are entitled to qualified immunity. (Defs.' Mem. Dismiss 14.) "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity, the court asks: (1) whether the official violated a constitutional right, and (2) whether the constitutional right was clearly established. *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232). Specifically, defendants argue:

> [r]easonable individuals in the same situation as Defendants would not have known that failing to apply a veteran's preference in a promotion process could violate [Edwards] constitutional rights to equal protection and Due Process. Furthermore, reasonable officials in the same position as Defendants could not have anticipated failing to give Plaintiff a promotion so many years after his lawsuit could constitute actionable First Amendment retaliation.

(Defs.' Mem. Dismiss 14.).

PAGE 17 - FINDINGS AND RECOMMENDATION                              {*JGJ*}

Defendant's argument is not supported by actual facts that illustrate the individually named defendants did not know Edwards's constitutional rights were clearly established. As such, a 12(b)(6) motion is not the proper vehicle for the defendants to argue they have qualified immunity because whether or not the defendants reasonably knew or should have known that their actions would result in a violation of Edwards' constitutional rights is outside the scope of a motion to dismiss. As established in *Lee,* "a court may not take judicial notice of a fact that is 'subject to reasonable dispute'" at the pleading stage. 250 F.3d at 689. Here, whether or not the individually named defendants were aware that their actions would violate Edwards's constitutional rights is subject to reasonable dispute.

## *Conclusion*

For the reasons stated above, defendants' Motion to Dismiss for failure to state a claim (Doc. # 9) should be: GRANTED with prejudice as to plaintiff's Substantive Due Process claim and plaintiff's *Monell* claim alleging defendants Ott, Moore, and Gates' actions as "final policymakers" constituted a violation of plaintiff's constitutional rights; GRANTED without prejudice as to plaintiff's *Monell* claim alleging Multnomah County policy constituted a violation of plaintiff's constitutional rights; and DENIED as to the remainder of plaintiff's claims.

## *Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due December 24, 2014. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 9th Day of December, 2014.

JOHN V. ACOSTA
United States Magistrate Judge