UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ROD EDWARDS,

              Plaintiff,

v.

MULTNOMAH COUNTY SHERIFF DANIEL STATON; DIRECTOR OF HUMAN RESOURCES FOR THE MULTNOMAH COUNTY SHERIFF'S OFFICE JENNIFER OTT; MULTNOMAH COUNTY SHERIFF'S OFFICE UNDERSHERIFF TIM MOORE; MULTNOMAH COUNTY SHERIFF'S OFFICE CHIEF DEPUTY JASON GATES; by and through the MULTNOMAH COUNTY SHERIFF'S OFFICE, a political subdivision of MULTNOMAH COUNTY, OREGON,

              Defendants.

Case No. 3:14-CV-00531-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

Rod Edwards ("Edwards") filed a complaint against Multnomah County Sheriff's Office ("MCSO"), a political subdivision of Multnomah County (collectively "Multnomah") and four of its employees, Sheriff Daniel Staton, Jennifer Ott, Undersheriff Tim Moore, and Chief Deputy Jason Gates (collectively "Defendants"). Edwards claims he was denied the veterans preference provided by OR. REV. STAT. 408.230 when he applied for a promotion in 2012. He alleges this act occurred in retaliation for a lawsuit he filed under the same statute in 2003.

Defendants move for summary judgment, arguing Edwards failed to establish a *prima facie* case for First Amendment retaliation. This court finds, based on the evidence properly before it, Edwards failed to present evidence demonstrating his previous lawsuit was a substantial or motivating factor in Multnomah's misapplication of the veterans preference. Accordingly, Defendants' motion for summary judgment should be granted.

*Preliminary Procedural Matters*

I. *Monell* claim

Following judgment on Multnomah's motion to dismiss, Edwards's *Monell* claim was dismissed with leave to amend. Edwards did not amend his complaint to include facts that allege a *Monell* claim, but because it remains viable this court discusses the merits in relation to the pretext argument for the retaliation claim.

II. Evidentiary Issues

Evidence presented in support of or in opposition to a motion for summary judgment must be based on personal knowledge, properly authenticated, and admissible under the Federal Rules of Evidence. FED. R. CIV. P. 56(c) (2015). "To satisfy the requirement of authenticating or identifying

an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. CIV. P. 901(a) (2015). Evidence that is not properly authenticated will not be considered by the court when reviewing a motion for summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

*A. Deposition Excerpts*

In *Orr*, the Ninth Circuit addressed the requirements for authenticating a deposition:

> A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent, the action, and includes the reporter's certification that the deposition is a true record of the testimony of the deponent. See Fed. R. Evid. 901(b); Fed. R. Civ. P. 56(e) & 30(f)(1). Ordinarily, this would be accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted. It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a "true and correct copy." Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.

*Id.* at 774 (footnote and case citations omitted). Edwards and Defendants each offered deposition excerpts that do not meet the *Orr* standards.

Edwards offered excerpts from depositions of the Defendants and Captain Monte Reiser. The excerpts are identified in Edwards's counsel, Sean Riddell's, declaration as "true and correct copies" of the depositions from the relevant deponents; however, the excerpts are accompanied by incomplete cover pages and lack any proof of certification by a reporter. Defendants offered and properly authenticated an excerpt from Gates' deposition. Under *Orr*, "when a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties." *Id.* at 776. The excerpts Edwards offers from Gates' deposition bear the same characteristics as the Defendants' authenticated excerpt (date, identification of deponent, and

reporting company). Thus, Gates's deposition excerpts will be admitted. However, the four remaining depositions offered by Edwards are inadmissable. Similarly, Defendants submitted excerpts from Edwards's deposition which lacked both an explanatory cover page and a reporter's certification. Therefore, these excerpts are inadmissible. *Chao v. Westside Drywall*, 709 F. Supp. 2d 1037 (D. Or. 2010); *Kesey v. Francis*, No. CV. 06-540-AC, 2009 WL 909530 (D. Or. April 3, 2009). Because only Gates's deposition excerpts meet the *Orr* standard, the other excerpts will not be considered as evidence.

*B. Relevancy Objections*

Edwards objects to numerous portions of testimony and related exhibits from employees of Multnomah, including the Individual Defendants, Captain Reiser, and Lieutenant Eric "Harry" Smith. The testimony and exhibits relate to incidents of Edwards's misconduct and corresponding disciplinary actions. Edwards argues Defendants offered this evidence to defame him, and it is not relevant to whether he was denied the veterans preference in retaliation for a previous lawsuit. (Pl. Reply at 3, 4.)

At the summary judgment stage, the court must look at the evidence presented to it by the parties and determine if there is a genuine issue of material fact. While engaging in this task, the court must necessarily apply the underlying summary judgment standard when it encounters evidence that is irrelevant, speculative, ambiguous, argumentative, or constitutes a legal conclusion exclusively within the purview of the court's consideration. *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (noting various evidentiary objections, such as relevance, were redundant at the summary judgment stage where the court can award summary judgment only in the absence of a genuine issue of material fact based on evidence the content of

which must be admissible). Accordingly, the court generally will not address these objections in detail in this Findings and Recommendation, but will refer to specific objections only as necessary to its ruling.

*Background*

Multnomah hired Edwards as an enforcement deputy sheriff in 1994. (Ott Decl. Ex 3, at 4.) During his tenure at MCSO, Edwards has been assigned to Patrol, Court Services, River Patrol, Civil Unit, Inspections Unit, SWAT, Dive Team, and Firearms Instructor. (*Id.* at 2.)

Multnomah is a public employer, and Edwards is a disabled veteran as contemplated by the laws of Oregon. (*Id.* at 6-11.) Under OR. REV. STAT. 408.230, public employers shall grant a preference to veterans and disabled veterans when applying for civil service positions and promotions. In an application process with a scored scale, the statute requires a public employer to give a five-point preference for veterans or a ten-point preference for disabled veterans; however, in non-numeric application processes the statute requires an employer to "devise and apply methods by which the employer gives special consideration in the employer's hiring decision to veterans and disabled veterans." OR. REV. STAT. 408.230(2)(c) (2016).

In 2002, Edwards applied for and was denied a promotion to the rank of Sergeant. (Ott Decl. ¶ 4.) Edwards filed a civil action in 2003 against Multnomah related to the veterans preference in its 2002 promotional process. (von Ter Stegge Decl. Ex. 3, at 1.) Edwards and Multnomah settled his civil action in 2006. (von Ter Stegge Decl. Ex. 1, at 2-3.) In 2005, Edwards reapplied and was selected for promotion to the rank of Sergeant. (Ott Decl. Ex. 3, at 4.)

In 2010, Edwards requested a transfer to a supervisory position on River Patrol. (Ott Decl. Ex 2, at1.) Multnomah granted the transfer request, but shortly after being transferred to River Patrol

the deputies Edwards supervised filed multiple complaints against him. (Gates Decl. ¶ 8.) These complaints described Edwards as inflexible, possessing an accusatory management style, and that he singled out the only female deputy, Hollie Quick, on the River Patrol unit. (Gates Decl. ¶ 16.)

The Internal Affairs Unit conducted a preliminary investigation into Edwards's supervision of Deputy Quick. (Smith Decl. ¶ 7, 9.) Chief Deputy Gates directed Edwards to not have any contact with the female deputy, and instructed Edwards on how to improve his management style. (Gates Decl. ¶ 17, 21.) Edwards did not follow that order and appointed himself as Deputy Quick's range master during a scheduled shooting test. (Gates Decl. ¶ 26.) This decision resulted in Deputy Quick filing another formal complaint against Edwards. (*Id.*) This misconduct resulted in Edwards's removal from the River Patrol, and in September 2010 he was denied a transfer back to that Unit. (Ott Decl. ¶ 20, Ex. 2.) In July of 2010, Edwards was also the subject of an Internal Affairs investigation because of disparaging comments he made about the River Patrol at a roll call. ( Moore Decl. Ex. 2, at 11-19.) At the time Edwards was denied a transfer to River Patrol, he was still the subject of an Internal Affairs investigation and complaints from deputies based on his supervision of that Unit. (Gates Decl. ¶ 30.)

In September 2012, Edwards applied for promotion to the rank of Lieutenant, and in October he learned he was not selected. (Riddell Decl. Ex. 3, at 1-3.) Edwards received a written explanation regarding the application of the statutory veterans preference and his performance in the application process. (*Id.*) The ultimate decision was Sheriff Staton's, and he concluded Edwards was not ready to be promoted to the rank of Lieutenant. (Staton Decl. ¶ 19.) Sheriff Staton was unaware of any disciplinary action taken against the candidate they selected, unlike Edwards whom Sheriff Staton knew had been disciplined in the preceding two years. (Staton Decl. ¶ 20.) The

members of the hiring panel also were aware of the disciplinary issues surrounding Edwards in the previous two years. Captain Reiser was an Inspector with the Internal Affairs Unit when Deputy Quick filed her complaint, and he assisted Under Sheriff Moore in drafting a Letter of Expectation instructing Edwards to not have any contact with Deputy Quick. (Reiser Decl. ¶ 4, 9.) Chief Deputy Gates fielded the complaint from Deputy Quick and recommended Lieutenant Smith conduct an investigation. (Gates Decl. ¶ 9-30; Smith Decl. ¶ 7.) None of these persons were involved in the promotional process when Edwards failed to obtain a promotion to Sergeant and the subsequent lawsuit in 2003. (Moore Decl. ¶ 3.)

The hiring panel's recommendations were based on each member's individual assessment during the interview process. (Staton Decl. ¶ 16.) The recommendations noted Edwards performed significantly worse on peer reviews compared to the other two applicants. (Moore Decl. ¶ 24.) The reviews included statements from deputies Edwards supervised, such as: "From my past dealing with Rod, he is an autocratic leader who does not take input from others, appears black and white in his opinions, he is task oriented and appears more concerned about process than people." (*Id.*) The hiring panel also based its decision on Edwards's written materials, which were of a lesser quality than the other applicants' materials. (*Id.* ¶ 23.) Edwards's application materials contained numerous spelling and grammatical errors, including the misspelling of his last name on his résumé. (Ott Decl. Ex. 3, at 2-5.) Edwards's application materials were less detailed than the other applicants,' who each turned in materials in excess of sixty pages. (*Id.*) Edwards submitted only eleven pages, six of which were the requisite forms to receive the veterans preference. (*Id.*)

Sheriff Staton and Captain Reiser state in their declarations they did not know of the 2003 lawsuit until after the conclusion of the 2012 promotional process. (Reiser Decl. ¶ 12, 12; Staton

Decl. ¶ 5, 6.) However, in December 2003, Captain Reiser replied to an email from Ms. Ott that mentioned Edwards's "discrimination trial" and asked for any documents related to Edwards. (Riddell Decl. Ex 2, at 21.) Captain Reiser's reply implies he was aware of the lawsuit, but he makes no mention of whether or not he knew of the factual context, stating only: "Here is a copy of the recent evaluation I completed and the only document that I have relating to Edwards." *Id.*

After failing to be promoted to Lieutenant, Edwards filed a complaint with the Civil Rights Division of the Oregon Bureau of Labor and Industries ("BOLI"), claiming the September 2012 promotional process violated OR. REV. STAT. 408.230. (Pl.'s Am. Compl. ¶ 39.) In May 2014, BOLI found Multnomah did not comply with the statute's requirements. (von Ter Stegge Decl. ¶ 4.) BOLI concluded the method of applying the preference was insufficient and inconsistently understood. *In the Matter of: Multnomah County Sheriff's Office, Respondent*, 2014 WL 7004599 (OR BOLI), at *24. Subsequently, Edwards filed this lawsuit, alleging Multnomah retaliated against him for the 2003 lawsuit by failing to properly apply his veterans preference during the 2012 promotional process.

*Legal Standard*

Summary judgment is appropriate only when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The court does not weigh evidence or determine the truth of the matter, but only determines whether there are genuine issues that must be resolved at trial. *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). If the evidence is such that a reasonable jury could return a verdict for the non-moving party, there is a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if, under the substantive law of the case,

resolution of the factual dispute could affect the outcome of the case. *Id.* at 248. The moving party bears the initial burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). The moving party satisfies its burden by offering the district court the portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its burden, the burden shifts to the non-moving party to establish the extent of genuine issue of material fact. FED. R. CIV. P. 56(e). To establish a genuine issue of material fact, the non-moving party need only present evidence from which a jury might return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 257. However, a mere scintilla of evidence in support of the non-moving party's position is insufficient. *Id.* at 252. Further, the non-moving party must make an adequate showing for each element of the claim for which it will be required to carry the burden of proof at trial. *Celotex*, 422 U.S. at 322-23.

*Discussion*

Edwards alleges Defendants denied him his statutory veterans preference in retaliation for his earlier lawsuit in which he claimed similar violations. The court must consider whether, as a matter of law, Edwards has presented sufficient evidence to meet the threshold of a *prima facie* case for retaliation against protected speech. To state a retaliation claim against a government employer for violation of the First Amendment, an employee must show: (1) the employee engaged in protected speech; (2) the employer took adverse employment action; and (3) the employee's speech was a substantial or motivating factor for the adverse employment action. *See Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996); *Hyland v. Wonder*, 972 F.2d 1129, 1135-36 (9th Cir. 1992).

Page 9 - FINDINGS & RECOMMENDATION                                                                    [KCW]

Defendants move for summary judgment on the basis Edwards failed to offer evidence to establish a *prima facie* case because: (1) denial of the veterans preference does not rise to the level of an adverse employment action; and (2) there is insufficient evidence to establish causation between the 2003 lawsuit and the 2012 promotional process. Defendants concede that Edwards's decision to speak out against the misapplication of the veterans preference was a protected activity. Accordingly, only the two elements are at issue here.

I. Adverse Employment Action

Here, there is no factual dispute that the veterans preference was insufficiently applied. The question is whether misapplication of a veterans preference benefit can serve as an adverse employment action. Multnomah and Defendants argue the denial of the veterans preference does not constitute an adverse employment action because the misapplication resulted in no change to compensation, location, work schedule, or position. This argument reads "material" too narrowly. Based on evidence in the record, this court concludes denial of the veterans preference in this promotional process can constitute an adverse employment action.

The Ninth Circuit reiterated the type of sanction imposed to discourage the exercise of First Amendment rights "need not be particularly great in order to find that rights have been violated." *Hyland*, 972 F.2d at 1135 (quoting *Elrod v. Burns*, 427 U.S. 347, 359 n.13 (1976)). The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases. A person's rights are unconstitutionally infringed "both where the government fines a person a penny for being a Republican and where it withholds the grant of a penny for the same reason." *Hyland*, 972 F.2d at 1135. The injury to position or privilege required to activate the First Amendment need not rise to the level of lost employment. *Hyland*, 972 F.2d at 1135. The relevant inquiry, as expressed by

the Ninth Circuit, is whether the state took "action designed to retaliate against and chill political expression." *Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir. 1989) (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). The Ninth Circuit has considered a range of acts to constitute adverse employment actions, including dismissing a government volunteer (*Hyland*, 972 F.2d at 1136), proposals to change work conditions (*Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 848 (9th Cir. 2002)), an unpleasant work assignment, a ten-day suspension from work, and unwarranted disciplinary action (*Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003)).

In some cases, the alleged retaliatory conduct is so insignificant it would not deter the exercise of First Amendment rights, and thus does not constitute an adverse employment action within the meaning of First Amendment retaliation cases. *Coszalter*, 320 F.3d at 975-77. (The Ninth Circuit recognized acts such as an unwarranted assignment of blame, repeated ongoing verbal harassment and humiliation, a threat of disciplinary action, and transfer to new duties may not independently constitute an adverse employment action, but when taken together it is clear the acts amounted to a sustained campaign of retaliation by the employer.) In *Nunez*, the plaintiff only showed "that he was bad-mouthed and verbally threatened." *Nunez v. City of L.A.*, 147 F.3d 867, 875 (9th Cir. 1998). The Ninth Circuit concluded such actions, even in response to protected speech, did not constitute an adverse employment action. *Id.* *Nunez* suggested the plaintiff must "demonstrate the loss 'of a valuable governmental benefit or privilege.'" *Id.* (quoting *Hyland*, 972 F.2d at 1136).

In *Handy v. Lane County*, the plaintiff alleged the denial of 24-hour access to a county building, his personal office, and to his archived emails constituted an adverse employment action.

No. CV. 6:12-01548-AA, 2016 WL 1108951 at *4 (D. Or. March 17, 2016). The court concluded the "restrictions placed on plaintiff were the sort of 'minor indignit[ies]' that do not give rise to a First Amendment retaliation claim." *Id.* at *5 (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010)). The court noted "it is true 'denial of even a trivial benefit' may give rise to a First Amendment claim for a public employee so long as 'the aim is to punish protected speech.'" *Id.* (quoting *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 977 (9th Cir. 2002)).

The most familiar adverse actions are exercises of governmental power that have the effect of punishing someone for his speech. *Blair*, 608 F.3d at 544. A reasonable person in Edwards's position would feel punished for speech if it appeared that the employer responded to an employee's application for promotion by designing and implementing a new method for applying a statutorily mandated benefit to that promotional process that then proved an improper method for applying the benefit. A statutorily-protected veterans preference clearly constitutes a 'valuable governmental benefit or privilege' as discussed in *Hyland* and reaffirmed in *Nunez*. Denial of a statutorily mandated preference as a form of retaliation for engaging in protected speech goes well beyond the deminimus 'bad-mouthing' in *Nunez* or denial of unlimited access in *Handy*. The evidence, examined in a light most favorable to Edwards, supports a conclusion that the inadequate application of the veterans preference can qualify as an adverse employment action.

II. Substantial or Motivating Factor

In the free speech cases in which the Ninth Circuit has held that circumstantial evidence created a genuine issue of material fact on the question of retaliatory motive, the plaintiff, in addition to offering evidence that the employer knew of his speech, produced at least one of the following three types of evidence: temporal proximity, expressed opposition by the employer, or facts to

Page 12 - FINDINGS & RECOMMENDATION                                          [KCW]

demonstrate the employer's explanations were false and pretextual. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 744 (9th Cir. 2001).

*A. Temporal Proximity*

A plaintiff can show retaliation was a substantial or motivating factor behind an adverse employment action by the proximity in time between the protected action and the alleged retaliatory employment decision, from which a jury could logically infer the action was taken in retaliation of the employee's speech. *Keyser*, 265 F.3d at 744 (quoting *Schartzman v. Valenzuela*, 846 F.2d 1209, 1212 (9th Cir. 1988)). Edwards does not offer sufficient evidence to overcome the lack of temporal proximity. The nine-year span between the lawsuit and the promotional process is too long of a period of time to allow a reasonable causal inference. The Ninth Circuit cautions against dismissing a retaliation claim because of timing alone: "A specified time period cannot be mechanically applied criterion. A rule that any period over a certain time is per se too long [...] would be unrealistically simplistic." *See Clark Cnty Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2002). However, in some cases the totality of the facts may form such a clear picture that a court is justified in granting summary judgment on the issue of retaliatory motive, but length of time considered without factual context is not enough of a basis. *Coszalter*, 320 F.3d 978.

Here, no reasonable inference of retaliation can be made from the nine-year gap between Edwards's protected action and the misapplication of the veterans preference benefit. Further, Edwards fails to offer evidence of an ongoing animus between himself and Defendants following the first lawsuit that would reasonably suggest a causal link. Instead, the record shows Edwards had positive experiences with Defendants during the nine-year span between incidents. Subsequent to settling the 2003 lawsuit, Edwards was promoted to Sergeant and was granted a transfer request to

work in a supervisory role with the River Patrol. This factual context, combined with the significant amount of time between events, compels the conclusion that reasonable jurors could not find the 2003 lawsuit was a substantial or motivating factor for the misapplication of the veterans preference in 2012.

*B. Expressions of Opposition*

To establish causation, a plaintiff can also offer direct evidence to show the employer expressed opposition to the speech either to the employee or others. *Keyser*, 265 F.3d at 741. Edwards does not provide any evidence Defendants expressed opposition to his protected speech during the 2012 promotional process. Edwards also fails to provide evidence the primary decision maker in the process, Sheriff Staton, knew of his 2003 lawsuit. The record shows Captain Reiser, Undersheriff Moore, and Chief Deputy Gates were aware of the lawsuit and on the hiring panel; however, they assert the 2003 lawsuit never was discussed during the 2012 promotional process. Edwards offers no evidence to contradict this testimony.

In other free speech cases where knowledge of the protected speech was established, courts have concluded that mere knowledge of the protected is insufficient by itself to establish retaliatory motive. *See Umbehr*, 518 U.S. 668, 685 (1996) ("To prevail, Umbehr must show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the Board members before they terminated him"); *Gillette v. Delmore*, 886 F.2d 1194, 1198-99 (9th Cir. 1989) (holding that partial summary judgment was appropriate because employee's evidence that the employer knew of the speech is not sufficient to meet the burden opposing summary judgment without a link between these events and the termination). Edwards has no such evidence here; in fact, he has no

evidence establishing Sheriff Staton had knowledge of the 2003 lawsuit. Edwards has not created a genuine issue of material fact using this approach.

*C. False & Pretextual Explanation*

The third method by which a plaintiff can demonstrate protected speech was a motivating factor in the employer's decision is by introducing evidence to show the employer proffered explanations which were false and pretextual. *Soranno's Gasco Inc. v. Morgan*, 874 F.2d 1310, 1315-16 (9th Cir. 1989).

Multnomah offers evidence of Edwards's poor application materials and disciplinary record as non-discriminatory reasons for not promoting him, but these reasons bear on Multnomah's decision not to promote Edwards; they have no bearing on the reason Multnomah did not give Edwards the veterans preference. The adverse employment action Edwards faced was an impact to the promotional process itself, not the failure to obtain the promotion. Multnomah's reliance on Edwards's disciplinary record and application materials here is misplaced.

Defendants do offer relevant evidence to explain that their failure to properly apply the preference was the product of an inadequate method, not of discriminatory animus. The record reflects that Defendants' declarations, responses to interrogatories, as well as excerpts from the BOLI hearing, are all consistent with this assertion. Ms. Ott, in her role as Director of Human Resources, instructed the members of the hiring panel to apply the veterans preference to Edwards by considering him a top candidate going into each stage of the process. Ms. Ott stated: "We believed we [applied the preference] by designating Sgt. Edwards as the top candidate[.]" (Riddell Decl. Ex 9.) Under Sheriff Moore similarly stated: "I understood that Rod Edwards was to receive preference as a disabled veteran [...] he was to be considered the top candidate going into each stage of the

process." (Moore Decl. ¶ 21.) Chief Deputy Gates's declaration stated: "[Edwards] was to be considered the top candidate going into each stage of the process." (Gates Decl. ¶ 33.) This testimony supports the assertion the members of the hiring panel discussed how to give Edwards his veterans preference and believed they did so properly.

Edwards argues this explanation for the misapplication is pretextual. Edwards presents evidence that a new, non-numeric method was designed for his promotional process and never used again. Edwards relies on this circumstantial evidence to demonstrate pretext and create a genuine dispute regarding causation. Multnomah responds that the lieutenant position went through a change in status, and, because it was an appointed position and did not require a standardized test, Multnomah understood the statute provided for flexibility on how to apply the preference. Multnomah asserts it diverged from a points-based system because that method is more effective when considering a larger number of applicants, and only three applicants were under consideration. Edwards presents no evidence to contradict Multnomah's explanation. Of the three applicants, two were veterans and both would have been subjected to the same veteran preference process. This fact undercuts Edwards's assertion that this method was designed only once Defendants knew he was applying for the position and made specifically to retaliate against him for his 2003 lawsuit. Multnomah and Defendants could not have known how many veterans would apply for the position or which applicants would be affected by the new process.

In the absence of any evidence showing Edwards's 2003 lawsuit was discussed and motivated Multnomah to use a different veterans preference process, the mere fact it was used only once does not sufficiently rebut the non-discriminatory reasons Multnomah and Defendants provide to explain the inadequate application of the veterans preference.

III. *Monell* claim

Edwards's *Monell* claim was dismissed with leave to amend following Defendants' motion to dismiss. To impose liability under a *Monell* claim, a municipality's official policy or custom must cause a constitutional violation. *Monell v. New York Cty Dept. of Social Services*, 436 U.S. 658, 691-92 (1978). Arguably, Multnomah's decision to change the method by which the veterans preference was applied was an official act and created a new policy, however, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985). Multnomah's method for applying the veterans preference was not inherently unconstitutional, and there is no dispute the 2012 promotional process was the only time Multnomah used the non-numeric method. Thus, this single instance is insufficient to state a *Monell* claim.

This court recognizes the presumption to grant leave to amend under FED R. CIV. P. 15, however, one of the factors to consider when determining whether to grant leave to amend is the futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). If it is clear that a complaint could not be saved by amendment, dismissal with prejudice is appropriate. *Change v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996). Based on the record, Edwards could not allege facts to remedy his complaint and impose municipal liability. The *Monell* claim should be dismissed with prejudice.

IV. Conclusion

Edwards fails to establish a *prima facie* case for retaliation under the First Amendment. Edwards did not offer evidence to sufficiently demonstrate the 2003 lawsuit was a substantial or motivating factor in the misapplication of the veteran's preference during the 2012 promotional

process. Edwards has not produced sufficient evidence to establish an ongoing animus between himself and Multnomah during the nine-year period between events to overcome the significant lack of temporal proximity. Also, there is no evidence in the record to show the three members of the hiring panel, Ms. Ott, or Sheriff Staton expressed any opposition to Edwards's protected speech or even discussed the 2003 lawsuit during the 2012 promotional process. Finally, there is insufficient evidence to rebut Defendants' non-discriminatory reasons for the insufficient application of the veterans preference. Ultimately, Edwards cannot carry his burden and show a genuine dispute of fact exists; thus, summary judgment should be granted.

*Conclusion*

Defendants' motion (ECF No. 49) should be GRANTED and this case dismissed in its entirety. Edwards's motion (ECF No. 69) should be DENIED as moot.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due June 6, 2016. If no objections are filed, a review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendations will go under advisement on that date.

IS IT SO ORDERED
DATED this /7th day of May, 2016

JOHN V. ACOSTA
United States Magistrate Judge